UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **MARDEN'S ARK CORPORATION**, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JUSTIN BODENHAMER**, a North Carolina individual,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

This case addresses a trend whereby realtors cold call phone numbers without consent violating the Telephone Consumer Protection Act. Plaintiff Marden's Ark Corporation ("Plaintiff Marden's Ark" or "Marden's Ark") brings this Class Action Complaint and Demand for Jury Trial against Defendant Justin Bodenhamer ("Defendant" or "Bodenhamer") to stop Bodenhamer from violating the Telephone Consumer Protection Act ("TCPA"). Bodenhamer makes calls to consumers using a pre-recorded voice message without the consumer's prior written consent in violation of the TCPA. As a result, Plaintiff seeks to obtain injunctive and monetary relief for all persons injured by Bodenhamer's telemarketing scheme. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

**PARTIES**

1. Plaintiff Marden's Ark Corporation is a non-profit corporation located in Youngsville, North Carolina.

2. Defendant Justin Bodenhamer is a realtor located in Raleigh, North Carolina. Defendant places calls into this District. Bodenhamer is the CEO/Founder of The Equity Pros and a real estate agent for eXp Realty.[1]

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because both Plaintiff and Defendant are located in this District as well as Defendant's wrongful conduct of calling the Plaintiff was directed to and received by Plaintiff in this District.

**TCPA BACKGROUND**

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[1] https://www.linkedin.com/in/justin-bodenhamer-475421126/

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[2]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[3]

16. According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Mar. 5, 2020).

17. Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id*.

18. Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

## COMMON ALLEGATIONS

---

[2] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[3] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

19. Defendant Bodenhamer is a real estate agent in North Carolina.

20. Defendant Bodenhamer places unsolicited calls to consumers using pre-recorded voice messages without first obtaining the necessary express prior written consent to place such calls.

21. Numerous consumers have complained online about receiving unsolicited autodialed calls from the Defendant's same phone number that called the Plaintiff.

- "I keep getting cold calls and spam emails from this garbage company. Gross."[4]

- "Stop cold calling homeowners with low ball offers and high pressure sales techniques. And stop calling!!"[5]

- "Stop calling me. You waste your time and my time."[6]

- "NO, I am not looking to sell my property. Stop calling."[7]

- "Received several unwelcome calls from your standard boiler room real estate scammers. I told them repeatedly I wasn't interested in selling and kept getting calls. I hate people like this and would never do business with someone who doesn't respect my privacy."[8]

22. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

---

[4] https://www.facebook.com/pg/equitypros/posts/?ref=page_internal
[5] *Id.*
[6] *Id.*
[7] https://en.yelp.ch/not_recommended_reviews/the-equity-pros-raleigh
[8] Google reviews – The Equity Pros

23. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing pre-recorded voice calls to cellular telephone numbers such as Plaintiff's.

**PLAINTIFF'S ALLEGATIONS**

24. On March 11, 2020, Plaintiff Marden's Ark received a pre-recorded call to its cell phone from Defendant using the phone number 919-739-2884.

25. The call was not answered, but a pre-recorded voicemail was left on Plaintiff's voicemail stating:

> "… no commissions or other fees when your house sells. No percentage of sale price, just a one-time fee and we'll get your home sold in no time. I'll call you back tomorrow, but if you need me in the meantime, my direct line is 919-701-5551. That was 919-701-5551. Thanks again. Look forward to speaking to you soon."

26. When the phone number that called Plaintiff 919-739-2884 is called, an automated system states, "Thanks for calling Equity Pros Realty."[9]

27. The phone number the Plaintiff is directed to call 919-701-5551 has been cited by other consumers as identifying as Equity Pros.[10]

28. Equity Pros Realty is a website owned by Defendant Justin Bodenhamer.

29. Equity Pros Realty provides real estate agent listing package services to those looking to sell property.

30. Plaintiff never consented to receiving solicitation calls from Defendant.

31. Plaintiff was not looking to sell any property.

---

[9] Based on an investigation conducted by Plaintiff's attorneys on April 19, 2020

[10] https://www.everycaller.com/phone-number/1-919-701-5551/

32. The unauthorized telephone call made by Defendant, as alleged herein, has harmed Plaintiff Marden's Ark in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of its phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redress for these injuries, Plaintiff Marden's Ark, on behalf of itself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded voice calls to cellular telephones.

## CLASS ALLEGATIONS

34. Plaintiff Marden's Ark brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using a pre-recorded voice, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.

35. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally

adjudicated and/or released. Plaintiff Marden's Ark anticipates the need to amend the Class definitions following appropriate discovery.

36. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Marden's Ark and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant used a pre-recorded voice when placing calls to Plaintiff and the members of the Class;

(b) Whether Defendant made the calls without consent;

(c) Whether Defendant's conduct constitutes a TCPA violation; and

(c) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

38. **Adequate Representation**: Plaintiff Marden's Ark will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor its counsel have any interests adverse to the Class.

39. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible

standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Pre-Recorded No Consent Class)

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

41. Defendant and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-Recorded No Consent Class using a pre-recorded voice.

42. These pre-recorded voice calls were made *en masse* without the consent of the Plaintiff and the other members of the Pre-Recorded No Consent Class.

43. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-Recorded No Consent Class are each entitled to a minimum of $500 in damages for each violation, and up to $1,500 in damages for each violation in the event that the Court determines that Defendant's conduct was willful and knowing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Marden's Ark, individually and on behalf of the Class, prays for the following relief:

44. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Marden's Ark as the representative of the Class; and appointing its attorneys as Class Counsel;

45. An award of actual and/or statutory damages and costs;

46. An order declaring that Defendant's actions, as set out above, violate the TCPA;

47. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

48. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Marden's Ark requests a jury trial.

DATED this 5th day of November, 2020.

*/s/ Avi R. Kaufman*
Avi R. Kaufman
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Counsel for Plaintiff*

*/s/ Ted Johnson*
Ted Lewis Johnson
North Carolina State Bar # 39791
PO Box 5272
Greensboro, NC 27435

Telephone: (336) 252-8596
Email: tedlewisjohnson@tedlewisjohnson.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*